# NEELY *v.* MARTIN K. EBY CONSTRUCTION CO., INC.

No. 12.  Argued January 16–17, 1967.—Decided March 20, 1967.

318

· *Kenneth N. Kripke* argued the cause for petitioner. With him on the briefs was *Charles A. Friedman.*

*John C. Mott* argued the cause for respondent. With him on the brief were *Anthony F. Zarlengo* and *Joseph S. McCarthy.*

MR. JUSTICE WHITE delivered the opinion of the Court. Petitioner brought this diversity action in the United States District Court for the District of Colorado alleg-

ing that respondent's negligent construction, mainte-
nance, and supervision of a scaffold platform used in the
construction of a missile silo near Elizabeth, Colorado,
had proximately caused her father's fatal plunge from the
platform during the course of his employment as Night
Silo Captain for Sverdrup & Parcel, an engineering firm
engaged in the construction of a missile launcher system
in the silo. At the close of the petitioner's evidence and
again at the close of all the evidence, respondent moved
for a directed verdict. The trial judge denied both motions and submitted the case to a jury, which returned
a verdict for petitioner for $25,000.

Respondent then moved for judgment notwithstanding
the jury's verdict or, in the alternative, for a new trial,
in accordance with Rule 50 (b), Federal Rules of Civil
Procedure.[1] The trial court denied the motions and
entered judgment for petitioner on the jury's verdict.
Respondent appealed, claiming that its motion for judgment *n. o. v.* should have been granted. Petitioner, as
appellee, urged only that the jury's verdict should be
upheld.

The Court of Appeals held that the evidence at trial
was insufficient to establish either negligence by respond-

---

[1] "(b) *Motion for Judgment Notwithstanding the Verdict.* Whenever a motion for a directed verdict made at the close of all the
evidence is denied or for any reason is not granted, the court is
deemed to have submitted the action to the jury subject to a later
determination of the legal questions raised by the motion. Not
later than 10 days after entry of judgment, a party who has
moved for a directed verdict may move to have the verdict and
any judgment entered thereon set aside and to have judgment
entered in accordance with his motion for a directed verdict . . . .
A motion for a new trial may be joined with this motion, or a new
trial may be prayed for in the alternative. If a verdict was returned
the court may allow the judgment to stand or may reopen the
judgment and either order a new trial or direct the entry of judgment as if the requested verdict had been directed. . . ."

ent or proximate cause and reversed the judgment of the District Court "with instructions to dismiss the action." Without filing a petition for rehearing in the Court of Appeals, petitioner then sought a writ of certiorari, presenting the question whether the Court of Appeals could, consistent with the 1963 amendments to Rule 50 of the Federal Rules[2] and with the Seventh Amendment's guarantee of a right to jury trial, direct the trial court to dismiss the action. Our order allowing certiorari directed the parties' attention to whether Rule

---

[2] Principally, the amendments added new subdivisions (c) and (d) to Rule 50:

"(c) *Same: Conditional Rulings on Grant of Motion.*

"(1) If the motion for judgment notwithstanding the verdict, provided for in subdivision (b) of this rule, is granted, the court shall also rule on the motion for a new trial, if any, by determining whether it should be granted if the judgment is thereafter vacated or reversed, and shall specify the grounds for granting or denying the motion for the new trial. If the motion for a new trial is thus conditionally granted, the order thereon does not affect the finality of the judgment. In case the motion for a new trial has been conditionally granted and the judgment is reversed on appeal, the new trial shall proceed unless the appellate court has otherwise ordered. In case the motion for a new trial has been conditionally denied, the appellee on appeal may assert error in that denial; and if the judgment is reversed on appeal, subsequent proceedings shall be in accordance with the order of the appellate court.

"(2) The party whose verdict has been set aside on motion for judgment notwithstanding the verdict may serve a motion for a new trial pursuant to Rule 59 not later than 10 days after entry of the judgment notwithstanding the verdict.

"(d) *Same: Denial of Motion.* If the motion for judgment notwithstanding the verdict is denied, the party who prevailed on that motion may, as appellee, assert grounds entitling him to a new trial in the event the appellate court concludes that the trial court erred in denying the motion for judgment notwithstanding the verdict. If the appellate court reverses the judgment, nothing in this rule precludes it from determining that the appellee is entitled to a new trial, or from directing the trial court to determine whether a new trial shall be granted."

50 (d) and our decisions in *Cone* v. *West Virginia Pulp & Paper Co.*, 330 U. S. 212; *Globe Liquor Co.* v. *San Roman*, 332 U. S. 571; and *Weade* v. *Dichmann, Wright & Pugh, Inc.*, 337 U. S. 801, permit this disposition by a court of appeals despite Rule 50 (c)(2), which gives a party whose jury verdict is set aside by a trial court 10 days in which to invoke the trial court's discretion to order a new trial.[3] We affirm.

Under Rule 50 (b), if a party moves for a directed verdict at the close of the evidence and if the trial judge elects to send the case to the jury, the judge is "deemed" to have reserved decision on the motion. If the jury returns a contrary verdict, the party may within 10 days move to have judgment entered in accordance with his motion for directed verdict. This procedure is consistent with decisions of this Court rendered prior to the adoption of the Federal Rules in 1938. Compare *Baltimore & Carolina Line, Inc.* v. *Redman*, 295 U. S. 654, with *Slocum* v. *New York Life Ins. Co.*, 228 U. S. 364, and *Aetna Ins. Co.* v. *Kennedy*, 301 U. S. 389. And it is settled that Rule 50 (b) does not violate the Seventh Amendment's guarantee of a jury trial. *Montgomery Ward & Co.* v. *Duncan*, 311 U. S. 243.

The question here is whether the Court of Appeals, after reversing the denial of a defendant's Rule 50 (b)

---

[3] Petitioner presented the following question in her petition for a writ of certiorari:

"Do Rules 50 (d) and 38 (a) Federal Rules of Civil Procedure and the Seventh Amendment to the Constitution of the United States preclude the Court of Appeals from instructing the trial court to dismiss an action wherein the trial court denied the defendant's motions for new trial and for judgment notwithstanding the verdict and entered judgment for the plaintiff?"

In view of the question presented by petitioner and our order granting certiorari, we do not consider whether the Court of Appeals correctly held that petitioner's evidence of negligence and proximate cause was insufficient to go to the jury.

motion for judgment notwithstanding the verdict, may itself order dismissal or direct entry of judgment for defendant. As far as the Seventh Amendment's right to jury trial is concerned, there is no greater restriction on the province of the jury when an appellate court enters judgment *n. o. v.* than when a trial court does; consequently, there is no constitutional bar to an appellate court granting judgment *n. o. v.* See *Baltimore & Carolina Line, Inc.* v. *Redman, supra.* Likewise, the statutory grant of appellate jurisdiction to the courts of appeals is certainly broad enough to include the power to direct entry of judgment *n. o. v.* on appeal. Section 2106 of Title 28 provides that,

> "The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances."

See *Bryan* v. *United States,* 338 U. S. 552.

This brings us to Federal Rules 50 (c) and 50 (d), which were added to Rule 50 in 1963 to clarify the proper practice under this Rule. Though Rule 50 (d) is more pertinent to the facts of this case, it is useful to examine these interrelated provisions together. Rule 50 (c) governs the case where a trial court has granted a motion for judgment *n. o. v.* Rule 50 (c)(1) explains that, if the verdict loser has joined a motion for new trial with his motion for judgment *n. o. v.,* the trial judge should rule conditionally on the new trial motion when he grants judgment *n. o. v.* If he conditionally grants a new trial, and if the court of appeals reverses his grant of judgment *n. o. v.,* Rule 50 (c)(1) provides that "the new

trial shall proceed unless the appellate court has otherwise ordered." On the other hand, if the trial judge conditionally denies the motion for new trial, and if his grant of judgment *n. o. v.* is reversed on appeal, "subsequent proceedings shall be in accordance with the order of the appellate court." As the Advisory Committee's Note to Rule 50 (c) makes clear, Rule 50 (c)(1) contemplates that the appellate court will review on appeal both the grant of judgment *n. o. v.* and, if necessary, the trial court's conditional disposition of the motion for new trial.[4] This review necessarily includes the power to grant or to deny a new trial in appropriate cases.

Rule 50 (d) is applicable to cases such as this one where the trial court has denied a motion for judgment *n. o. v.* Rule 50 (d) expressly preserves to the party who prevailed in the district court the right to urge that the court of appeals grant a new trial should the jury's verdict be set aside on appeal. Rule 50 (d) also emphasizes that "nothing in this rule precludes" the court of appeals "from determining that the appellee is entitled to a new trial, or from directing the trial court to determine whether a new trial shall be granted." Quite properly, this Rule recognizes that the appellate court may prefer that the trial judge pass first upon the appel-

---

[4] The Advisory Committee explains: "If the motion for new trial has been conditionally granted . . . [t]he party against whom the judgment n. o. v. was entered below may, as appellant, besides seeking to overthrow that judgment, also attack the conditional grant of the new trial. And the appellate court, if it reverses the judgment n. o. v., may in an appropriate case also reverse the conditional grant of the new trial and direct that judgment be entered on the verdict." 31 F. R. D. 645. See *Lind* v. *Schenley Indus. Inc.*, 278 F. 2d 79 (C. A. 3d Cir. 1960), cert. denied, 364 U. S. 835; *Moist Cold Refrigerator Co.* v. *Lou Johnson Co.*, 249 F. 2d 246 (C. A. 9th Cir. 1957), cert. denied, 356 U. S. 968; *Bailey* v. *Slentz*, 189 F. 2d 406 (C. A. 10th Cir. 1951). See also *Tribble* v. *Bruin*, 279 F. 2d 424 (C. A. 4th Cir. 1960).

lee's new trial suggestion. Nevertheless, consideration of the new trial question "in the first instance" is lodged with the court of appeals. And Rule 50 (d) is permissive in the nature of its direction to the court of appeals: as in Rule 50 (c)(1), there is nothing in Rule 50 (d) indicating that the court of appeals may not direct entry of judgment *n. o. v.* in appropriate cases.

Rule 50 (c)(2), n. 2, *supra,* is on its face inapplicable to the situation presented here. That Rule regulates the verdict winner's opportunity to move for a new trial if the *trial court* has granted a Rule 50 (b) motion for judgment *n. o. v.* In this case, the trial court denied judgment *n. o. v.* and respondent appealed. Jurisdiction over the case then passed to the Court of Appeals, and petitioner's right to seek a new trial in the trial court after her jury verdict was set aside became dependent upon the disposition by the Court of Appeals under Rule 50 (d).

As the Advisory Committee explained, these 1963 amendments were not intended to "alter the effects of a jury verdict or the scope of appellate review," as articulated in the prior decisions of this Court. 31 F. R. D. 645. In *Cone* v. *West Virginia Pulp & Paper Co., supra,* the defendant moved for a directed verdict, but the trial judge sent the case to the jury. After a jury verdict for the plaintiff, the trial court denied defendant's motion for a new trial. On appeal, the Court of Appeals reversed and ordered the entry of judgment *n. o. v.* This Court reversed the Court of Appeals on the ground that the defendant had not moved for judgment *n. o. v.* in the trial court, but only for a new trial, and consequently the Court of Appeals was precluded from directing any disposition other than a new trial. See also *Globe Liquor Co.* v. *San Roman, supra.* In *Johnson* v. *New York, N. H. & H. R. Co.,* 344 U. S. 48, this Court held that a verdict loser's motion to "set aside" the jury's verdict

did not comply with Rule 50 (b)'s requirement of a timely motion for judgment *n. o. v.* and therefore that the Court of Appeals could not direct entry of judgment *n. o. v.* And in *Weade* v. *Dichmann, Wright & Pugh, Inc., supra,* where a proper motion for judgment *n. o. v.* was made and denied in the trial court, we modified a Court of Appeals decision directing entry of judgment *n. o. v.* because there were "suggestions in the complaint and evidence" of an alternative theory of liability which had not been passed upon by the jury and therefore which might justify the grant of a new trial. 337 U. S., at 808–809.

The opinions in the above cases make it clear that an appellate court may not order judgment *n. o. v.* where the verdict loser has failed strictly to comply with the procedural requirements of Rule 50 (b), or where the record reveals a new trial issue which has not been resolved. Part of the Court's concern has been to protect the rights of the party whose jury verdict has been set aside on appeal and who may have valid grounds for a new trial, some or all of which should be passed upon by the district court, rather than the court of appeals, because of the trial judge's first-hand knowledge of witnesses, testimony, and issues—because of his "feel" for the overall case. These are very valid concerns to which the court of appeals should be constantly alert. Where a defendant moves for *n. o. v.* in the trial court, the plaintiff may present, in connection with that motion or with a separate motion after *n. o. v.* is granted, his grounds for a new trial or voluntary nonsuit. Clearly, where he retains his verdict in the trial court and the defendant appeals, plaintiff should have the opportunity which 50 (d) affords him to press those same or different grounds in the court of appeals. And obviously judgment for defendant-appellant should not be ordered where the plaintiff-appellee urges grounds for a nonsuit or new trial

which should more appropriately be addressed to the trial court.

But these considerations do not justify an ironclad rule that the court of appeals should never order dismissal or judgment for defendant when the plaintiff's verdict has been set aside on appeal. Such a rule would not serve the purpose of Rule 50 to speed litigation and to avoid unnecessary retrials. Nor do any of our cases mandate such a rule. Indeed, in *Pence v. United States,* 316 U. S. 332, we affirmed a Court of Appeals decision reversing the trial court's failure to grant judgment *n. o. v.* And in *New York, N. H. & H. R. Co.* v. *Henagan,* 364 U. S. 441, this Court itself directed entry of judgment for a verdict loser whose proper request for judgment *n. o. v.* had been wrongly denied by the District Court and by the Court of Appeals.[5] In view of these cases, the language of Rule 50 (d), and the statutory grant of broad appellate jurisdiction, we think a more discriminating approach is preferable to the inflexible rule for which the petitioner contends.

---

[5] Since the decision in *Cone* v. *West Virginia Pulp & Paper Co.,* six courts of appeals have reversed the denial of a Rule 50 (b) motion and directed entry of judgment *n. o. v.* in addition to the Tenth Circuit's decision in this case. See, *e. g., Capital Transit Co.* v. *Gamble,* 82 U. S. App. D. C. 57, 160 F. 2d 283; *Stopper* v. *Manhattan Life Ins. Co.,* 241 F. 2d 465 (C. A. 3d Cir.), cert. denied, 355 U. S. 815; *Richmond Television Corp.* v. *United States,* 354 F. 2d 410 (C. A. 4th Cir.); *Mills* v. *Mitsubishi Shipping Co.,* 358 F. 2d 609 (C. A. 5th Cir.); *Lappin* v. *Baltimore & Ohio R. Co.,* 337 F. 2d 399 (C. A. 7th Cir.); *Massachusetts Mut. Life Ins. Co.* v. *Pistolesi,* 160 F. 2d 668 (C. A. 9th Cir.). The other circuits had rendered similar decisions prior to *Cone.* See *Ferro Concrete Constr. Co.* v. *United States,* 112 F. 2d 488 (C. A. 1st Cir.), cert. denied, 311 U. S. 697; *Brennan* v. *Baltimore & Ohio R. Co.,* 115 F. 2d 555 (C. A. 2d Cir.), cert. denied, 312 U. S. 685; *Connecticut Mut. Life Ins. Co.* v. *Lanahan,* 113 F. 2d 935, modifying 112 F. 2d 375 (C. A. 6th Cir.); *Federal Sav. & Loan Ins. Corp.* v. *Kearney Trust Co.,* 151 F. 2d 720 (C. A. 8th Cir.).

There are, on the one hand, situations where the defendant's grounds for setting aside the jury's verdict raise questions of subject matter jurisdiction or dispositive issues of law which, if resolved in defendant's favor, must necessarily terminate the litigation. The court of appeals may hold in an employer's suit against a union, for example, that the case is within the exclusive jurisdiction of the National Labor Relations Board, or in a libel suit, that the defendant was absolutely privileged to publish the disputed statement. In such situations, and others like them, there can be no reason whatsoever to prevent the court of appeals from ordering dismissal of the action or the entry of judgment for the defendant.

On the other hand, where the court of appeals sets aside the jury's verdict because the evidence was insufficient to send the case to the jury, it is not so clear that the litigation should be terminated. Although many of the plaintiff-appellee's possible grounds for a new trial, such as inadequacy of the verdict, will not survive a decision that the case should not have gone to the jury in the first place, there remain important considerations which may entitle him to a new trial. The erroneous exclusion of evidence which would have strengthened his case is an important possibility. Another is that the trial court itself caused the insufficiency in plaintiff-appellee's case by erroneously placing too high a burden of proof on him at trial. But issues like these are issues of law with which the courts of appeals regularly and characteristically must deal. The district court in all likelihood has already ruled on these questions in the course of the trial and, in any event, has no special advantage or competence in dealing with them. They are precisely the kind of issues that the losing defendant below may bring to the court of appeals without ever moving for a new trial in the district court. Cf. *Globe Liquor Co.* v. *San Roman*, 332 U. S. 571, 574.

Likewise, if the plaintiff's verdict is set aside by the trial court on defendant's motion for judgment *n. o. v.*, plaintiff may bring these very grounds directly to the court of appeals without moving for a new trial in the district court.[6] Final action on these issues normally rests with the court of appeals.

A plaintiff whose jury verdict is set aside by the trial court on defendant's motion for judgment *n. o. v.* may ask the trial judge to grant a voluntary nonsuit to give plaintiff another chance to fill a gap in his proof. *Cone* v. *West Virginia Pulp & Paper Co.*, 330 U. S., at 217. The plaintiff-appellee should have this same opportunity when his verdict is set aside on appeal. Undoubtedly, in many cases this question will call for an exercise of the trial court's discretion. However, there is no substantial reason why the appellee should not present the matter to the court of appeals, which can if necessary remand the case to permit initial consideration by the district court.

In these cases where the challenge of the defendant-appellant is to the sufficiency of the evidence, the record in the court of appeals will very likely be a full one. Thus, the appellee will not be required to designate and print additional parts of the record to substantiate his grounds for a nonsuit (or a new trial), and it should not be an undue burden in the course of arguing for his verdict to indicate in his brief why he is entitled to a new trial should his judgment be set aside. Moreover, the appellee can choose for his own convenience when to make his case for a new trial: he may bring his grounds

---

[6] The Advisory Committee's Note to Rule 50 (c)(2) explains: "Even if the verdict-winner makes no motion for a new trial, he is entitled upon his appeal from the judgment n. o. v. not only to urge that that judgment should be reversed and judgment entered upon the verdict, but that errors were committed during the trial which at the least entitle him to a new trial." 31 F. R. D. 646.

for new trial to the trial judge's attention when defendant first makes an *n. o. v.* motion, he may argue this question in his brief to the court of appeals, or he may in suitable situations seek rehearing from the court of appeals after his judgment has been reversed.

In our view, therefore, Rule 50 (d) makes express and adequate provision for the opportunity—which the plaintiff-appellee had without this rule—to present his grounds for a new trial in the event his verdict is set aside by the court of appeals. If he does so in his brief—or in a petition for rehearing if the court of appeals has directed entry of judgment for appellant— the court of appeals may make final disposition of the issues presented, except those which in its informed discretion should be reserved for the trial court. If appellee presents no new trial issues in his brief or in a petition for rehearing, the court of appeals may, in any event, order a new trial on its own motion or refer the question to the district court, based on factors encountered in its own review of the case. Compare *Weade* v. *Dichmann, Wright & Pugh, Inc., supra.*

In the case before us, petitioner won a verdict in the District Court which survived respondent's motion for judgment *n. o. v.* In the Court of Appeals the issue was the sufficiency of the evidence and that court set aside the verdict. Petitioner, as appellee, suggested no grounds for a new trial in the event her judgment was reversed, nor did she petition for rehearing in the Court of Appeals, even though that court had directed a dismissal of her case. Neither was it suggested that the record was insufficient to present any new trial issues or that any other reason required a remand to the District Court. Indeed, in her brief in the Court of Appeals, petitioner stated, "This law suit was fairly tried and the jury was properly instructed." It was, of course, incumbent on the Court of Appeals to consider the new trial question in the light

of its own experience with the case. But we will not assume that the court ignored its duty in this respect, although it would have been better had its opinion expressly dealt with the new trial question.

In a short passage at the end of her brief to this Court, petitioner suggested that she has a valid ground for a new trial in the District Court's exclusion of opinion testimony by her witnesses concerning whether respondent's scaffold platform was adequate for the job it was intended to perform. This matter was not raised in the Court of Appeals or in the petition for a writ of certiorari, even though the relevant portions of the transcript were made a part of the record on appeal. Under these circumstances, we see no cause for deviating from our normal policy of not considering issues which have not been presented to the Court of Appeals and which are not properly presented for review here. Supreme Court Rule 40 (1)(d)(2). See *J. I. Case Co. v. Borak,* 377 U. S. 426, 428–429; *California* v. *Taylor,* 353 U. S. 553, 556–557, n. 2.

Petitioner's case in this Court is pitched on the total lack of power in the Court of Appeals to direct entry of judgment for respondent. We have rejected that argument and therefore affirm.

*It is so ordered.*

MR. JUSTICE DOUGLAS and MR. JUSTICE FORTAS, while agreeing with the Court's construction of Rule 50, would reverse the judgment because in their view the evidence of negligence and proximate cause was sufficient to go to the jury.

MR. JUSTICE BLACK, dissenting.

I dissent from the Court's decision in this case for three reasons: First, I think the evidence in this case was clearly sufficient to go to the jury on the issues of

both negligence and proximate cause. Second, I think that under our prior decisions and Rule 50, a court of appeals, in reversing a trial court's refusal to enter judgment *n. o. v.* on the ground of insufficiency of the evidence, is entirely powerless to order the trial court to dismiss the case, thus depriving the verdict winner of any opportunity to present a motion for new trial to the trial judge who is thoroughly familiar with the case. Third, even if a court of appeals has that power, I find it manifestly unfair to affirm the Court of Appeals' judgment here without giving this petitioner a chance to present her grounds for a new trial to the Court of Appeals as the Court today for the first time holds she must.

## I.

Petitioner and respondent, both in their briefs on the merits and in their oral argument, have vigorously and extensively addressed themselves to the question of whether the lower court was correct in holding that petitioner's evidence of negligence and proximate cause was insufficient to go to the jury. The Court, however, conveniently avoids facing this issue—which if resolved in petitioner's favor, would completely dispose of this case [1]—by a footnote statement that this issue was not presented in the petition for certiorari nor encompassed by our order granting certiorari. Besides the fact that this seems to me to be an overly meticulous reading of the petition for certiorari and our order granting it,[2]

---

[1] Heretofore, when faced with this issue, the Court has met it head-on and thus avoided unnecessarily discussing the effect of Rule 50. See, *e. g.*, *Conway* v. *O'Brien*, 312 U. S. 492; *Berry* v. *United States*, 312 U. S. 450; *Halliday* v. *United States*, 315 U. S. 94.

[2] Petitioner's "Question Presented," as set out in n. 3 of the Court's opinion, is whether—in addition to Rule 50 (d)—Rule 38 (a) and the Seventh Amendment "preclude the Court of Appeals from instructing the trial court to dismiss an action wherein the trial

I see no reason for the Court's refusal to deal with an issue which is undoubtedly present in this case even though not specifically emphasized in the petition for certiorari. Although usually this Court will not consider questions not presented in the petition for certiorari, our Rule 40 (1)(d)(2) has long provided that "the court, at its option, may notice a plain error not presented," and the Court has frequently disposed of cases by deciding crucial issues which the parties themselves failed to present. See, e. g., *Brotherhood of Carpenters* v. *United States*, 330 U. S. 395; *Silber* v. *United States*, 370 U. S. 717; *Boynton* v. *Virginia*, 364 U. S. 454. If, as I believe, the Court of Appeals was wrong in concluding that the evidence was insufficient to go to the jury, then its reversal of the jury's verdict was a violation of the Seventh Amendment, and certainly this is the kind of plain constitutional error that this Court can and should correct.

That the evidence was more than ample to prove both negligence and proximate cause is, I think, inescapably clear from even a cursory review of the undisputed facts in this record. Petitioner's father was killed while work-

---

court denied the defendant's motions for new trial and for judgment notwithstanding the verdict and entered judgment for the plaintiff?" Certainly, if there were sufficient evidence to go to the jury, then Rule 38 (a) and the Seventh Amendment preclude the Court of Appeals from directing a dismissal of petitioner's case after she had obtained a jury verdict. To make it further clear that petitioner was challenging the Court of Appeals' ruling on the sufficiency of the evidence, the petition for certiorari also states that "petitioner does not concede for one moment that the trial court and the jury were wrong and that the appellate court was right in interpreting the evidence as to proximate cause and negligence." And our order granting certiorari, while directing counsel's attention to the question of the Court of Appeals' power to dismiss the case under Rule 50 (c) and (d), stated that this question was "[i]n addition to all the questions presented by the petition." 382 U. S. 914.

ing on the construction of a missile-launching silo in
Colorado. Neely worked for an engineering firm and his
job was to work on certain concrete blocks suspended 130
feet from the bottom of the silo. Respondent, a carpen-
try firm responsible for the construction, maintenance,
and supervision of all scaffolding in the silo, constructed
a wooden platform between two of the concrete blocks in
order to allow workers such as Neely to go from one block
to the other. The platform, however, did not cover the
entire distance between the blocks nor was it level with
them. Instead, it was two feet horizontally away from
either block and was raised two feet vertically above the
blocks. Also, a railing was constructed on one side of
the platform between it and one of the blocks. No rail-
ing was placed on the other side of the platform. When
Neely along with three fellow workers arrived at the silo,
they were told by respondent's foreman that the platform
was ready. The only way they could get from the plat-
form to the blocks was by jumping the gap between the
platform and blocks. However, because of the railing on
one side of the platform, the workers could not jump
directly across the two-foot gap to the block on that side,
but had either to jump three feet diagonally to the block
or to climb over the railing. One worker successfully
leaped to the block, fastened his safety belt, and then
looked back and saw Neely, who was to follow, falling
head first through the hole between the platform and the
block. Neely, failing to make the jump, fell to his death
130 feet below.

Petitioner's case consisted of the testimony of the day
foreman, one of the carpenters who constructed the plat-
form, and the worker who was closest to Neely when he
fell. Quite understandably, in view of the strong evi-
dence, petitioner did not call to testify the two other
workers who witnessed Neely's fall or the other carpen-
ters who worked on the platform. She did, however,

introduce several revealing photographs of the platform, blocks, and intervening gap taken immediately after the accident. On respondent's objection, the trial judge excluded several other photographs which showed nets which, after the accident, were placed under the platform for the safety of the investigators. There was testimony that neither the railing nor platform broke and that there was no grease on the platform. But when petitioner's counsel asked the day foreman whether he considered the platform safe and adequate, he replied in the negative, though this testimony, on respondent's objection, was then ordered stricken as opinion evidence on an ultimate issue. The trial court refused to allow the same question to be asked of the other witnesses. At one time, the carpenter did testify that a railing was put on only one side of the platform because lunch hour was nearing and the platform had to be completed before then.

On this evidence, which the trial judge characterized as presenting a "close case," the Court of Appeals held a verdict should have been directed for respondent. Although the court was willing to assume that there might be some negligence in the size of the platform or the placing of the railing along one side, and though it was willing to concede "that the platform might possibly have had something to do with his [Neely's] fall," 344 F. 2d 482, 486, the court purported to find no evidence, not even circumstantial evidence, that the construction of the platform was the proximate cause of the fall. I think this holding cries for reversal. If constructing a platform 130 feet in the air, at which height workmen use safety belts, with a three-foot diagonal gap over which workers must leap and with a railing which makes a direct jump impossible, does not itself show negligence and proximate cause, then it is difficult to conceive of any evidence that would. Besides the size of the platform and the presence of the railing, the photographs

shown to the jury, and reproduced in this record, reveal other possible defects in its construction: a vertical kickboard extending beyond the railing into the gap through which Neely jumped; rough boards on the floor of the platform. The fact that Neely was coming headfirst by the time he passed the block two feet below might have made it reasonable for the jury to have concluded that he tripped on these impediments rather than merely stepped in the opening. In short, I believe it was a clear violation of the Seventh Amendment to deprive petitioner of a jury verdict rendered on this evidence.

## II.

Since the adoption of Rule 50, our cases have consistently and emphatically preserved the right of a litigant whose judgment—whether it be a judgment entered on the verdict or judgment *n. o. v.*—is set aside to invoke the discretion of the trial court in ruling on a motion for new trial. The first of these cases was *Montgomery Ward & Co.* v. *Duncan,* 311 U. S. 243, where the trial judge, unlike here, granted the defendant's motion for judgment *n. o. v.,* but in doing so failed to rule on his alternative motion for a new trial. The Court of Appeals reversed the trial court's grant of judgment *n. o. v.* to the defendant and remanded the case with directions to enter judgment on the verdict for the plaintiff, overruling defendant's contention that the trial judge should be given an opportunity to pass on his alternative motion for new trial. Holding that the trial judge should have initially ruled on this alternative motion, this Court remanded the case to the trial judge for the purpose of passing on that motion. In explaining this result the Court said:

> "The rule contemplates that either party to the action is entitled to the trial judge's decision on both motions, if both are presented. . . . If, how-

ever, as in the present instance, the trial court erred in granting the motion the party against whom the verdict went is entitled to have his motion for a new trial considered in respect of asserted substantial trial errors and matters appealing to the discretion of the judge." *Id.*, at 251–252.

The question here, however, unlike that in *Duncan,* is whether the Court of Appeals, after holding that the District Court erred in failing to direct a verdict against the plaintiff, can then order the District Court to dismiss the case and thereby deprive the verdict winner of any opportunity to ask the trial judge for a new trial in order to cure a defect in proof in the first trial. This question was first considered in *Cone* v. *West Virginia Pulp & Paper Co.,* 330 U. S. 212. In *Cone,* as in this case, the question was whether the Court of Appeals could direct the dismissal of a case in which the trial court had erroneously failed to grant a directed verdict. In that case no motion for judgment *n. o. v.* had been made by the verdict loser. We held that the Court of Appeals could not under those circumstances order the dismissal of the case. Noting that "[d]etermination of whether a new trial should be granted or a judgment entered under Rule 50 (b) calls for the judgment in the *first instance* of the judge who saw and heard the witnesses and has the feel of the case which no appellate printed transcript can impart," *id.*, at 216 (emphasis added), we held that "a litigant should not have his right to a new trial *foreclosed* without having had the benefit of the trial court's judgment on the question," *id.*, at 217 (emphasis added). We clearly indicated that the result would have been the same had the verdict loser, as had the respondent here, unsuccessfully moved for a judgment *n. o. v.* in the trial court, for in that case, likewise, the verdict winner would have had to wait until the Court of Appeals deprived him of his verdict before presenting his grounds

for a new trial. We specifically rejected a suggestion—today accepted by the Court—that the verdict winner should have to claim his right to a new trial in the Court of Appeals or lose it. *Id.*, at 218.

Following *Cone*, we emphasized and re-emphasized in *Globe Liquor Co.* v. *San Roman*, 332 U. S. 571, that the reason why courts of appeals are without power to dismiss cases in situations like this is that the power to determine this issue is vested exclusively in the judge who tried the case. And again, in *Weade* v. *Dichmann, Wright & Pugh, Inc.*, 337 U. S. 801, even where—as in this case—a timely motion for judgment *n. o. v.* had been made, the Court affirmed the Court of Appeals' holding that the verdict could not stand, but, relying on *Cone* and *Globe Liquor*, modified its judgment to provide the trial judge with an opportunity to decide whether the verdict winner was entitled to a new trial. *Id.*, at 809 and n. 8. See also *Johnson* v. *New York, N. H. & H. R. Co.*, 344 U. S. 48; *Fountain* v. *Filson*, 336 U. S. 681.

This issue of whether a new trial is justified after a verdict is set aside either by a trial or an appellate court is a new issue which it was not necessary to decide in the original trial. It is a factual issue and that the trial court is the more appropriate tribunal to determine it has been almost universally accepted by both federal and state courts throughout the years. There are many reasons for this. Appellate tribunals are not equipped to try factual issues as trial courts are. A trial judge who has heard the evidence in the original case has a vast store of information and knowledge about it that the appellate court cannot get from a cold, printed record. Thus, as we said in *Cone*, the trial judge can base the broad discretion granted him in determining factual issues of a new trial on his own knowledge of the evidence and the issues "in a perspective peculiarly available to him alone." 330 U. S., at 216. The special suitability

of having a trial judge decide the issue of a new trial in cases like this is emphasized by a long and unbroken line of decisions of this Court holding that the exercise of discretion by trial judges in granting or refusing new trials on factual grounds is practically unreviewable by appellate courts. See, *e. g., Fairmount Glass Works* v. *Cub Fork Coal Co.,* 287 U. S. 474, 481–482; cited with approval in *Montgomery Ward & Co.* v. *Duncan, supra,* at 253, n. 12.

Today's decision is out of harmony with all the cases referred to above. The Court's opinion attempts to justify its grant of power to appellate courts by pointing to instances in which those courts, and even assertedly this Court, have utilized this power in the past. The Court cites *Pence* v. *United States,* 316 U. S. 332, and *New York, N. H. & H. R. Co.* v. *Henagan,* 364 U. S. 441, as such instances. In *Pence,* the Court of Appeals reversed the trial court's refusal to grant judgment *n. o. v.* and remanded for further consistent proceedings. We affirmed without the slightest indication that we felt the Court of Appeals' mandate deprived the verdict winner of the chance to move for a new trial on remand. Neither did the Court indicate that this would be the effect of its mandate in *Henagan* where it remanded the case to the District Court to enter judgment *n. o. v.* for the verdict loser. And the same can be said of almost every other post-*Cone* court of appeals decision cited by the Court in note 5. Cf. *Johnson* v. *New York, N. H. & H. R. Co., supra,* at 54, n. 3.

The Court also attempts to justify its new grant of power to appellate judges by a strained process of reasoning. First, the Court suggests that the power of an appellate court to dismiss a case after setting aside a litigant's verdict can be derived from 28 U. S. C. § 2106. This idea, of course, was first suggested by a dissent in

*Johnson* v. *New York, N. H. & H. R. Co., supra,* at 65, which argued that because of § 2106 "the discretion now rests with the Court of Appeals to grant a new trial or to direct a verdict according to law on the record already made." This contention, however, was not deemed worthy of argument or comment either by the Court in its opinion or by others who dissented in the *Johnson* case. Section 2106 merely deals with the general power of appellate courts and indicates no congressional purpose to overcome the long-standing and established practice, recognized by this Court's decisions and Rule 50, that the discretion to decide whether a new trial should be granted, when the appellate court finds a gap in the supporting evidence, rests with the trial judge and not with the appellate court. It begs the question to argue that it is appropriate for an appellate court in such circumstances to order a dismissal merely because § 2106 provides that a court of appeals may direct the entry of an "appropriate judgment."

The Court further purports to derive this power from the provisions of Rule 50 (c) and (d). The Court notes that under Rule 50 (c)(1), where the trial judge grants a judgment *n. o. v.* and either grants or denies the conditional motion for new trial, an appellate court in reversing the judgment *n. o. v.* has "the power to grant or to deny a new trial in appropriate cases." But, as the Court fails to recognize, the crucial prerequisite to the exercise of this appellate power is a ruling in the first instance, as required in *Cone,* by the trial court on the motion for new trial. Here that crucial prerequisite is missing.

The Court then proceeds to find Rule 50 (c)(2) inapplicable on its face to a situation where the trial court denies a judgment *n. o. v.* but an appellate court orders that one be entered. In doing so, the Court ignores the

purpose of Rule 50 (c)(2). The Rules Committee explained this provision as follows:

> "Subdivision (c) (2) is a reminder that the verdict-winner is entitled, even after entry of judgment n. o. v. against him, to move for a new trial in the usual course." 31 F. R. D. 646.

The rule does not remotely indicate that the verdict winner loses this right to move for a new trial if the trial court's entry of judgment n. o. v. against him is on direction by the appellate court rather than on its own initiative. Sections (c) and (d) were added to Rule 50 in 1963, after all the cases discussed above had been decided. As the Notes of the Rules Committee indicate, these amendments were made to implement those decisions which had emphasized the importance of having trial judges initially determine the factual issue of whether a new trial is justified in cases where judgment n. o. v. has been entered against the verdict winner, either by the trial or appellate court. The Committee at no place hinted that the amendments were meant to change the practice established by those cases, and, to the contrary, it specifically stated that, "The amendments do not alter the effects of a jury verdict or the scope of appellate review." 31 F. R. D. 645. (Emphasis added.)

Certainly this is true of Rule 50 (d). This section provides that the verdict winner, who prevailed on the motion for judgment n. o. v., "may, as appellee, assert grounds entitling him to a new trial in the event the appellate court concludes that the trial court erred in denying the motion for judgment notwithstanding the verdict" (emphasis added) and that "nothing in this rule precludes it [the appellate court] from determining that the appellee is entitled to a new trial, or from directing the trial court to determine whether a new trial shall be

granted." Because the Court finds that the rule "is permissive in the nature of its direction to the court of appeals," it concludes "there is nothing in Rule 50 (d) indicating that the court of appeals may not direct entry of judgment *n. o. v.* in appropriate cases." The Court entirely overlooks the fact that the rule is likewise permissive in the nature of its direction to the verdict winner as appellee: it provides that the verdict winner "may" ask the Court of Appeals for a new trial; it does not provide that he must do so in order to protect his right to a new trial. Contrary to the Court, I think the express failure of Rule 50 (d) to give the appellate court power to order a case dismissed indicates a clear intention to deny it any such power. The practice now permitted by Rule 50 (d) was first embodied in the Notes of the Rules Committee to the proposed, but unadopted, amendments of 1946. The Notes suggested that a verdict winner could, as appellee, assign grounds for a new trial in the event the appellate court set aside his verdict. In *Cone,* however, we expressly rejected the contention that the verdict winner's failure, as appellee, to assign grounds for a new trial in the appellate court gave that court the power to deny him a new trial. *Cone* v. *West Virginia Pulp & Paper Co., supra,* at 218 and n. 6. This rejection was extensively discussed by the commentators, most of whom concluded that under *Cone* the verdict winner should be allowed a chance to present his motion for new trial at the trial court level.[3] Finally, when Rule 50 (d) was adopted, there was not the slightest indication that it was intended to adopt the practice that we found objectionable in *Cone.* In fact, it was carefully worded to avoid giving the appellate court any power to *deny* a

[3] See, *e. g.,* Comment, 51 Nw. U. L. Rev. 397, 400–402 (1956); Note, 58 Col. L. Rev. 517, 524–525 (1958).

new trial. I do not believe this omission unintentional, for the language of Rule 50 (c)(1), adopted at the same time, does purport to give the appellate court this power when it reverses a judgment *n. o. v.* and the trial court has already denied the verdict loser's conditional motion for new trial. It does so clearly by providing that "subsequent proceedings shall be in accordance with the order of the appellate court."

In short, today's decision flies in the teeth of Rule 50 (c)(2), and our cases which that rule was intended to implement, by giving the Court of Appeals the power, clearly withheld by Rule 50 (d), to substitute its judgment for the trial court's and then decide that justice requires no new trial.

### III.

Even were I to agree with the Court that courts of appeals have the power to deny a verdict winner a new trial, I could not agree to the affirmance of such a denial here. Here, so far as appears from the record, the Court of Appeals never even gave a thought to the question of whether petitioner was entitled to a new trial, but simply required that the district judge dismiss the lawsuit as though it were an automatic necessity. And petitioner, in seeking to support her verdict without directing the Court of Appeals' attention to any grounds for a new trial, had every right to rely on our past cases which plainly told her that she was entitled to make her motion for a new trial to the trial judge who is far more able to determine whether justice requires a new trial. While in one breath the Court says that it "will not assume that the court [of appeals] ignored its duty" to "consider the new trial question," in another breath it notes that "[t]his matter was not raised in the Court of Appeals." And because petitioner failed to present grounds for a new trial to the Court of Appeals, the Court, while recognizing that she here presents grounds for a new trial

which might require decision by the trial court, refuses to consider these grounds.

In refusing to consider petitioner's grounds for a new trial, the Court completely ignores what was done in *Weade* v. *Dichmann, Wright & Pugh, Inc., supra.* There we ordered the case remanded to the trial court to pass on petitioner's motion for new trial because petitioner suggested to this Court that there was an alternative theory presented by the complaint and evidence. However, nowhere in the record in that case was it indicated that petitioner had argued this alternative theory in the Court of Appeals, and nothing in our opinion indicates any such requirement. The Court correctly summarizes *Weade* as holding that "an appellate court may not order judgment *n. o. v.* where . . . *the record reveals a new trial issue which has not been resolved.*" (Emphasis added.) I think the record here reveals such an issue and that, at the very least, petitioner should now be given a chance to argue that issue to the Court of Appeals.

The record here clearly reveals that there were gaps in petitioner's case which she might, if given a chance, fill upon a new trial. First, only one of the three eye-witnesses to Neely's fall and only one of the carpenters who worked on the platform were called as witnesses. Second, the trial court excluded testimony by all the witnesses as to their opinions of the adequacy of the platform. Third, several of petitioner's very relevant photographs of the platform were excluded by the trial judge. From such circumstances as these the trial judge might properly have concluded that petitioner was entitled to a new trial to fill the gaps in her case. It is particularly pertinent in this respect that the Court of Appeals itself said:

> "It may, of course, be conceded that the platform might possibly have had something to do with his

fall, but there is nothing in the record to show what it was." 344 F. 2d, at 486.

It surely cannot be dismissed as idle conjecture to think that petitioner could, if given a chance, introduce sufficient evidence to prove to the most exacting fact finder that the three-foot diagonal gap in the platform 130 feet above the ground had something to do with this fall and this death.