**AMERICAN STANDARD, INC., and American Standard International, Inc., Plaintiffs,**

v.

**YORK INTERNATIONAL CORPORA-TION, and York International, S.A. De C.V., Defendants.**

No. 01–C–632–S.

United States District Court, W.D. Wisconsin.

Dec. 20, 2002.

---

George P. McAndrews, Chicago, IL, Michael P. Crooks, Donald B. Ayer, Washington, DC, for plaintiffs.

Mark A. Cameli, Reinhart, Boerner, Van Deuren, Milwaukee, WI, Richard L. Stroup, Finnegan, Henderson & Farabow, Washington, DC, for defendants.

## MEMORANDUM AND ORDER

SHABAZ, District Judge.

Plaintiffs American Standard, Inc. and American Standard International, Inc. commenced this action for patent infringement alleging that defendants York International Corporation and York International, S.A. de C.V. infringed United States Patents Nos. 5,067,560 (the '560 patent) and 4,715,190 (the '190 patent). The jury found that claim 10 of the '190 patent was literally infringed but invalid because of anticipation under 35 U.S.C. § 102. Prior to trial the Court held claims 9, 10 and 15 of the '560 patent invalid as anticipated. The jury found claims 6 and 16 of the '560 patent not infringed and invalid for a number of reasons. Judgment was entered on the jury's verdict.

Before the Court are renewed motions by the parties for judgment as a matter of law pursuant to Rule 50 as well as defendants' request for sanctions pursuant to Rule 11, Federal Rules of Civil Procedure, and attorney's fees pursuant to 35 U.S.C. § 285.

## MEMORANDUM

■ In a renewed Rule 50 motion upon an issue already determined by the jury, "the district court must determine whether there exists evidence of record upon which [the] jury might properly have returned a verdict in [the non-movant's] favor when the correct legal standard is applied." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 975 (Fed.Cir.1995). The standard for Rule 50(a) determinations is the same as that for summary judgment pursuant to Rule 56. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Accordingly, a movant may prevail on a renewed Rule 50 motion if after taking all inferences in favor of the non-movant no reasonable fact-finder could find for the non-movant. *See id.*

■ Among defendants' post-verdict submissions is a renewed motion for judgment that claims 6 and 16 of the '560 patent are obvious in light of prior art. Plaintiffs do not contest any of defendants' motions insofar as they address the '560 patent. Accordingly, the Court grants defendants' motion and declares claims 6 and 16 of the '560 patent obvious. "[A] disclosure that anticipates under § 102 also renders the claim invalid under § 103, for 'anticipation is the epitome of obviousness.'" *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1548 (Fed.Cir.1983) (quoting *In re Fracalossi*, 681 F.2d 792 (Cust. & Pat.App.1982)).

*Validity of Claim 10 of the '190 Patent*

Plaintiffs renew their motion under Rule 50(b) that claim 10 of the '190 patent is not invalid due to anticipation, arguing that defendants failed to offer a single piece of prior art that embodied all elements of claim 10. Defendants likewise renew their motion requesting that claim 10 of the '190 patent be further declared invalid for obviousness pursuant to § 103. As a threshold matter, however, defendants challenge plaintiffs' renewed motion on procedural grounds, alleging that their argument on the renewed motion exceeds the scope of the original motion and accordingly must be denied.

■ For procedural matters not unique to patent law, the Federal Circuit looks to regional circuit law. *See Wilson Sporting Goods v. David Geoffrey & Assoc.*, 904 F.2d 677, 683 (Fed.Cir.1990) (ap-

plying fourth circuit law for determining whether initial Rule 50 motion was made with sufficient specificity); *Moxness Prods., Inc. v. Xomed, Inc.,* 891 F.2d 890, 892 (Fed.Cir.1989). Rule 50(a) requires the moving party to "specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment." Specificity is demanded for two reasons: to maintain the integrity of the Seventh Amendment guaranty of a trial by jury, and more pertinent to this action, to provide the non-movant with a chance to remedy any deficiencies in its case. *See Benson v. Allphin,* 786 F.2d 268, 273–74 (7th Cir.1986). Thus, whether the grounds asserted on a renewed Rule 50 motion were sufficiently raised initially during the trial depends on whether the non-movant was made aware of those grounds and provided with an opportunity to address them. *See Parts and Elec. Motors v. Sterling Elec. Inc.,* 826 F.2d 712, 716 (7th Cir.1987).

 Plaintiffs initially requested a directed verdict of no anticipation on the ground that no witness identified any single prior art reference that contained all elements of claim 10 of the '190 patent. On their renewed motion plaintiffs elaborate on this point by suggesting that the jury did not fully understand the Court's claim construction presented in the jury instructions and applied it incorrectly when they considered claim 10 in light of defendants' proffered evidence. This argument simply elaborates upon their initial motion that no one piece of prior art anticipates claim 10 of the '190 patent. Unlike defendant's motion in *Sterling Electric,* this argument does not advance a novel theory of the case that would result in presentation of different evidence such that defendants were somehow prejudiced.

However, plaintiffs do stray from their initial motion by now arguing that claim 10 requires the presence of a specifically programmed microprocessor. Plaintiffs never brought this to the jury's attention, nor seek to include it in the jury instructions or argue it to the Court. Insofar as plaintiffs suggest limiting claim 10's construction to a microprocessor specifically programmed with a controlling algorithm, plaintiffs have waived this argument. *See Interactive Gift Exp., Inc. v. Compuserve Inc.,* 256 F.3d 1323, 1346 (Fed.Cir.2001) (noting appropriateness of waiver when the scope of claim construction is changed). To hold otherwise would unfairly prejudice defendants because they were not given the opportunity to address the matter. Accordingly, the jury was entitled to consider solid-state controls present in the prior art as equivalents to the microprocessor disclosed in the '190 patent specification.

 Having disposed of defendants' procedural objections, the merits of the parties' motions are now addressed. Section 102 governs anticipation and provides that a patent is invalid if it is either known, used, or patented or described in a publication in this or a foreign country. 35 U.S.C. § 102(a), (b). Prior art anticipates only when it discloses every element of a patent claim sufficiently to enable a person skilled in the relevant art to construct the patented invention without undue experimentation. *See In re Paulsen,* 30 F.3d 1475, 1478–79 (Fed.Cir.1994); *Helifix Ltd. v. Blok–Lok, Ltd.,* 208 F.3d 1339, 1348 (Fed.Cir.2000). Although a patent is presumed valid, this presumption may be overcome by clear and convincing evidence of anticipation. *Helifix,* 208 F.3d at 1346.

Claim 10 of the '190 patent reads:

10. In a temperature conditioning system for conditioning a fluid to a setpoint temperature, a control for modulating the capacity of the system to maintain the temperature of the fluid at the setpoint unless an operating parame-

**994**

ter is near a limit which would cause a protective shutdown of the system to avoid catastrophic failure and possible damage, said control comprising

 a. means for sensing the condition of the operating parameter;

 b. means for selecting the limit for the operating parameter; and

 c. control means responsive to the sensing means, for determining the deviation of the operating parameter from its limit, and if the deviation is within a predefined increment, modulating the capacity of the system as a function of the deviation rather than to maintain the fluid at its setpoint temperature.

Where, as here, the claim is written in means plus function form the "claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." 35 U.S.C. § 112 ¶ 6.

[T]he scope of such a claim is not limitless, but is confined to structures expressly disclosed in the specification and corresponding equivalents. Thus, the statutory provision prevents an overly broad claim construction by requiring reference to the specification, and at the same time precludes an overly narrow construction that would restrict coverage solely to those means *expressly* disclosed in the specification.

*Symbol Technologies, Inc. v. Opticon, Inc.,* 935 F.2d 1569, 1575 (Fed.Cir.1991). In construing a means plus function claim the Court must first identify the structure corresponding to the means located in the specification, then must further ask whether a person having ordinary skill in the relevant art would so identify the structure. *See Atmel Corp. v. Information Storage Devices, Inc.,* 198 F.3d 1374, 1381–82 (Fed.Cir.1999). Both parties address two items of prior art: the U–1 control, which was produced by plaintiffs in the early 80's, and the Carrier control, also produced in the early 80's.

Plaintiffs argue that the U–1 control lacks two elements of claim 10: a sensed limit beyond which a chiller would suffer catastrophic failure and a microprocessor programmed with the protective algorithms. The U–1 control, plaintiffs maintain, is not a true protective control as the electrical current limit that it recognizes is simply to keep power consumption down rather than to prevent catastrophic failure of the compressor motor. Additionally, it uses a solid-state implementation as opposed to the microprocessor disclosed in the '190 specification. Moreover, neither the U–1 nor Carrier control truly modulates capacity as a function of deviation according to the Court's claim construction, instead continuously reducing capacity once the limit is exceeded at some point.

■ The jury reasonably found the '190 patent invalid for anticipation. The U–1 control, under the Court's claim interpretation, can reasonably be seen as disclosing all elements of claim 10 to a person skilled in the relevant art. As noted above, because plaintiffs waived their specially-programmed microprocessor limitation, it is reasonable to conclude that the U–1's solid-state control is equivalent to a microprocessor. The current limit on the U–1 control reasonably meets the protective limit element. The limit is user-adjustable up to 100% of the chiller capacity. By definition, exceeding 100% capacity comes near to the point at which the system would be required to shut down to avoid catastrophic failure. Furthermore, the '190 patent provides that these protective limits are user-adjustable. Finally, it is reasonable to conclude that the U–1 control modulates chiller capacity as a function of deviation from the current limit. Although the U–1 control decreases capacity in a continuous fashion once the

current draw exceeds the limit, it modulates capacity in a fashion similar to the '190 patent's algorithm up to the limit. As the Court determined in its Memorandum and Order dated June 26, 2002, the precise algorithm need not be duplicated given the wide range of chillers to which the '190 patent is potentially applicable. Accordingly, a control system utilizing an algorithm that modulates capacity up to a set limit point, then reduces capacity on a continual basis until the limit point is no longer exceeded, can reasonably be viewed as disclosing the elements of claim 10. Plaintiffs' renewed motion for a judgment as a matter of law that claim 10 of the '190 patent is not invalid for anticipation is denied.

 Even if the '190 patent were not anticipated it is clearly invalid as obvious. Section 103 provides:

> [a] patent may not be obtained though the invention is not identically disclosed . or described as set forth in section 102 ... if the differences between the [invention] ... and the prior art are such that the [invention] ... would have been obvious at the time [it] ... was made to a person having ordinary skill in the [relevant] art....

To find an invention obvious, the prior art must supply some motivation for or teach a person having ordinary skill in the relevant art to combine the invalidating references. *See In re Huston*, 308 F.3d 1267, 1280 (Fed.Cir.2002). Additionally, secondary evidence of nonobviousness, such as commercial success of the invention, the invention's addressing long standing yet unsolved needs, and failure of others to come up with alternatives must be considered if present.[1] *In re GPAC, Inc.*, 57 F.3d 1573, 1580 (Fed.Cir.1995). For such evidence to have substantial weight, a nexus between it and the patented invention must be demonstrated. *Id.*

 Claim 10 is clearly obvious in light of the trial evidence. As previously explained the U–1 control discloses modulating capacity, as opposed to a continuous reduction, around a limit other than the temperature set point. The Carrier control discloses both a microprocessor as the main controller means and a reduction of capacity (although not necessarily in a modulating fashion) to protect a chiller near some design limit to prevent a catastrophic failure while continuing to keep the system running, as opposed to a complete system shutdown. The usefulness of applying a microprocessor to solve a control problem is clearly taught. Indeed, plaintiffs point out that "Carrier utilized a microprocessor merely to implement its own earlier designs...." Plaintiffs' Resp. Br. (Obviousness) at 17. It is a simple and logical step to apply a microprocessor programmed to modulate capacity around some designated point to the task of protecting a chiller from catastrophic failure while still allowing it to operate, albeit at a

---

1. Defendants cite to *Dow Chemical Co. v. Halliburton Oil Well Cementing Co.*, 324 U.S. 320, 65 S.Ct. 647, 89 L.Ed. 973 (1945) for the proposition that secondary considerations are only relevant and accordingly should only be considered in close cases where obviousness is not apparent. Even if this was considered a clear case of obviousness, the Federal Circuit has since held, where a district court failed to consider secondary evidence in what it determined was a clear case of obviousness, that "[i]t is jurisprudentially inappropriate to disregard any relevant evidence on any issue in any case, patent cases included.... [Secondary considerations] must always when present be considered en route to a determination of obviousness." *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538 (Fed.Cir. 1983). The Supreme Court has yet to revisit the issue, and *Dow Chemical* is best viewed as commenting upon the relative weight secondary considerations should be given in clear cases of obviousness rather than requiring their total disregard.

reduced capacity, which is precisely what claim 10 discloses.

■ The evidence of secondary considerations do not change this conclusion. Defendants correctly argue that plaintiffs failed to establish a clear nexus between the commercial success of their chillers and the benefits of the '190 patent. Testimony given addressed the benefits of both the '560 and '190 patents, and did not show the '190 patent contributing significantly by itself to plaintiffs' success. Although defendants purchased one of plaintiffs' chillers that included a control covered by the '190 patent, plaintiffs failed to conclusively show that defendants did anything more than study the design. Finally, plaintiffs fail to support their claim that others in the field of air conditioning have tried and failed to develop the '190 invention. Accordingly, secondary considerations do not overcome the Court's conclusion that claim 10 of the '190 patent is obvious.

### Infringement of the '190 Patent

The Court having upheld the jury's finding of invalidity of claim 10 of the '190 patent, defendants' renewed motion for judgment as a matter of law of noninfringement is moot. Likewise, defendants' renewed motion for judgment as a matter of law of noninfringement of chillers made and sold outside the United States, and plaintiffs' cross motion for a determination of infringement under the doctrine of equivalents, issues not submitted to the jury, are denied as moot.

### Defendants' Motions for Sanctions and Attorneys' Fees

■ Defendants seek attorneys' fees pursuant to both Rule 11 and 35 U.S.C. § 285. Because the Court finds this an exceptional case under § 285 and because the award of fees pursuant to § 285 fully encompasses and is broader than the sanc-

tions sought under Rule 11, it declines to address the Rule 11 motion.

An exceptional case finding is warranted because plaintiffs' claims under the '560 patent were unjustified and vexatious and because plaintiffs' tactics in discovery were dilatory, misleading and in bad faith.

■ Pursuant to § 285 "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." Whether a case is exceptional is a factual question defendants must prove by clear and convincing evidence. *See Interspiro USA, Inc. v. Figgie Intern., Inc.*, 18 F.3d 927, 933 (Fed.Cir.1994). Among the grounds appropriate for finding a case exceptional are litigation misconduct and vexations, unjustified, and otherwise bad faith litigation. *Epcon Gas Sys. Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1034 (Fed.Cir.2002). Moreover, "[l]itigation misconduct and unprofessional behavior . . . may suffice, by themselves, to make a case exceptional." *Id.*

Plaintiffs obviously failed to undertake a reasonable investigation of their claims for infringement of the '560 patent. Their position regarding the definition of the various asserted claims of the '560 patent throughout trial hinged upon "impinging airflows." To sustain such an infringement claim plaintiffs were required to have at least done some type of modeling to determine the interaction of airflows in defendants' accused chillers. This they did—several months after filing suit. Plaintiffs' corporate representative testified that only a visual inspection and possibly measurement of coil spacing was performed prior to filing suit. While the Court does not speculate upon the extent of testing which would constitute a reasonable investigation, clearly the cursory examination plaintiffs conducted fails to pass muster. Furthermore, considering the jury verdict finding both noninfringement

and invalidity for a number of reasonable grounds along with plaintiffs' midstream switch in asserted claims without a corresponding change in their proffered claim construction, inexorably leads to the conclusion that plaintiffs' motivation for bringing claims of infringement of the '560 patent was to substantially inconvenience and thwart the defendants. There was no basis in fact for their suit insofar as it concerns the '560 patent.

Additionally the dilatory tactics in which plaintiffs engaged throughout this action, renders this an exceptional case. Plaintiffs have continuously been less than responsive to discovery requests. Their letter concerning document production dated February 18, 2002 is misleading, detracting from the potential relevance of the CDROM literature that plaintiffs possessed. If the documents were relevant, albeit cumulative, they should have provided the materials to defendants pursuant to the discovery order. The relevance of the CDROM materials was later confirmed in plaintiffs' characterization of their downplayed offer as a missed opportunity for document review. Shortly before trial and after close of discovery plaintiffs produced a number of boxes of potentially relevant prior art. Considering the fact that plaintiffs have an entire library devoted to technical literature as well as facilities for creating indexed and searchable databases, this inexcusable late production can only be viewed as an attempt to thwart defendants' efforts to litigate and prevent them from presenting a coherent and well-prepared case.

Based on plaintiffs' evasive discovery behavior and the unmeritorious nature of their '560 claims, the Court concludes that plaintiffs' litigation tactics were in bad faith to force defendants into settlement and away from their legitimate defenses. Accordingly, defendants' motion for a declaration of an exceptional case and request for attorneys' fees will be granted.

## ORDER

IT IS ORDERED that defendants' renewed motions for a determination that claims 6 and 16 of the '560 patent and claim 10 of the '190 patent are invalid for obviousness are GRANTED.

IT IS FURTHER ORDERED that plaintiffs' renewed motion for a determination that claim 10 of the '190 patent is not invalid for anticipation is DENIED.

IT IS FURTHER ORDERED that defendants' and plaintiffs' motions for determinations of infringement or non-infringement of claim 10 of the '190 patent are DENIED as moot.

IT IS FURTHER ORDERED that this is an exceptional case pursuant to 35 U.S.C. § 285 and defendants' motion for reasonable attorneys' fees is GRANTED.

IT IS FURTHER ORDERED that defendants have thirty (30) days from the date of this order to file a detailed accounting and justification of their requested fees, plaintiffs have twenty (20) days thereafter to respond, and defendants have ten (10) days from receipt to reply.

IT IS FURTHER ORDERED that judgment be amended to include claims 9, 10 and 15 of the '560 patent found invalid on summary judgment and to include the award of attorneys' fees.